IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| DONALD WARREN DUNSTON, : | |
| : | |
| Plaintiff, : | |
| : | |
| VS. : | |
| : | 1 : 13-CV-103 (WLS) |
| NURSE PRACTITIONER BROWN, : | |
| : | |
| Defendant. : | |
| : | |

### RECOMMENDATION

Plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 on June 14, 2013. (Doc. 1). Presently pending in this action is Defendant's Motion for Summary Judgment. (Doc. 15).

### Background

Plaintiff, an inmate incarcerated at Autry State Prison ("ASP"), slipped and fell on October 1, 2012, and was taken to medical. (Doc. 1). Plaintiff alleges that he told an unnamed nurse that he had severe pain in his lower back, pain and tingling down his left leg, and pain into his neck. Plaintiff states that he was given Advil for pain, but x-rays were not taken and he was not seen by a doctor. On October 3, 2012, Plaintiff was seen by Defendant Nurse Brown, a nurse practitioner at ASP; she allegedly did "nothing", but made sure Plaintiff was going to get Naproxen. Plaintiff states that he went back to medical on October 10, 2012 because his back was getting worse. Defendant allegedly stated she was not going to see Plaintiff because she saw him on October 3. Plaintiff maintains that Defendant was deliberately indifferent to Plaintiff's serious medical needs, violating his Eighth Amendment rights.

Defendant filed her Motion for Summary Judgment on January 17, 2014. (Doc. 15). On January 21, 2014, the Court notified Plaintiff of the filing of Defendant's Motion for Summary Judgment,

advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 18). Plaintiff has not filed a response to Defendant's Motion for Summary Judgment.

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

materials – including the facts considered undisputed – show that the movant is entitled to it". Fed R. Civ. P. 56(e)(3).

### Discussion

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In order to show that a prison official acted with deliberate indifference to a serious medical need, Plaintiff must prove that there is an "objectively serious medical need" and the "prison official acted with deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

To establish the objective element, a prisoner must show that the medical need poses a substantial risk of serious harm if left unattended. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds, by *Hope v. Pelzer*, 536 U.S. 730 (2002).

To establish that a prison official acted with deliberate indifference to a serious medical need, Plaintiff must also show that the prison official had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown*, 387 F.3d at 1351. A prison official's subjective knowledge of a risk is a question of fact as to which the defendant "must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2007) (emphasis in original) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

A serious medical need can also be established if there is a delay in treatment that worsens the

3

condition. *Hill*, 40 F.3d at 1188-1189. However, deliberate indifference entails more than mere negligence, and must be more than a medical judgment call or an inadvertent failure to provide medical care. *Estelle*, 429 U.S. at 106; *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980). Additionally, an inmate who receives adequate medical care, but disagrees with the mode or amount of treatment has not established deliberate indifference. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991).

In asserting that she is entitled to summary judgment, Defendant has submitted an affidavit, portions of Plaintiff's medical records, and grievances filed by Plaintiff in relation to his October 1, 2012 fall. (Docs. 15-1 – 15-3).

Defendant's evidence shows that Plaintiff was being treated for several chronic conditions, and was seen by a physician regularly for Chronic Care visits. (Doc. 15-2, Brown Aff., ¶ 9(a)). On May 9, 2012, Plaintiff was seen by medical due to complaints of back pain as a result of a fall. (*Id.* at ¶ 9(c); Doc. 15-1, p. 28). Plaintiff "was diagnosed with lumbar strain and was prescribed Baclofen, which he later indicated had not provided him any relief." (Docs. 15-2, Brown Aff., ¶ 9(c); 15-1, p. 28).

Approximately two weeks later, Plaintiff was seen in the Medical Clinic with continued complaints of back pain. (Docs. 15-2, Brown Aff., ¶ 9(d); 15-1, p. 27). Plaintiff was again diagnosed with lumbar strain, and was prescribed Naproxen and Robaxin for the pain. (Docs. 15-2, Brown Aff., ¶ 9(d); 15-1, p. 27). Defendant saw Plaintiff on July 11, 2012 for continuing back pain. (Docs. 15-2, Brown Aff., ¶ 9(e); 15-1, p. 26). Defendant issued Plaintiff a back brace for support and to help with the pain, and Defendant continued Plaintiff's prescriptions for Robaxin and Naproxen. (Docs. 15-2, Brown Aff., ¶ 9(e); 15-1, p. 26). Plaintiff was given a refill of Naproxen on August 9, 2012. (Doc. 15-2, Brown Aff., ¶ 9(f)).

Plaintiff was treated in the Medical Clinic after falling while coming out of the shower on October

1, 2012.  (*Id.* at ¶ 9(g); Doc. 15-1, p. 22).  Plaintiff was given Ibuprofen for pain, and was instructed to rest, drink plenty of fluids, and return to the Medical Clinic if needed.  (Docs. 15-2, Brown Aff., ¶ 9(g); 15-1, p. 22).  Plaintiff returned to the Medical Clinic two days later complaining of back pain from the fall.  (Doc. 15-2, Brown Aff., ¶ 9(h)).  "He was seen by Nurse Practitioner Saunders who gave him a very detailed examination and interviewed him regarding his back pain." (*Id.*).  Plaintiff was told to continue taking Naproxen, and was instructed on mild stretching exercises to strengthen his back.  (*Id.*; Doc. 15-1, p. 21).

On October 11, 2012, Plaintiff returned to the Medical Clinic complaining that his back pain was not better.  (Doc. 15-2, Brown Aff., ¶ 9(i)).  Defendant was on duty; she reviewed Plaintiff's back pain complaint and the information on his vital signs that had been taken when Plaintiff arrived at the Medical Clinic.  (*Id.*; Doc. 15-1, p. 20).  Plaintiff's "vital signs were stable with no indication of any acute distress." (Doc. 15-2, Brown Aff., ¶ 9(i)).  Defendant "also reviewed the information in [Plaintiff's] Medical Records on his October 3d Clinic visit, and noted he received a thorough examination and interview by Nurse Saunders [regarding] his back pain treatment." (*Id.*; Doc. 15-1, p. 20).  Based on the information contained in Plaintiff's file, Plaintiff's prescription for Naproxen, and because it would take a period of time for the prescribed treatment plan to have any effect on Plaintiff's back pain, Defendant determined that Plaintiff did not need to be seen by a nurse on October 11, 2012.  (Doc. 15-2, Brown Aff., ¶ 9(i)).

Plaintiff was seen for a Chronic Care visit on October 30, 2012.  (*Id.* at ¶ 9(k); Doc. 15-1, p. 18).  The examining physician noted that Plaintiff complained of back pain, and was still taking medication for his back.  (Docs. 15-1, p. 18; 15-2, Brown Aff., ¶ 9(k)).  Defendant saw Plaintiff on November 1, 2012 for back pain.  (Docs. 15-2, Brown Aff., ¶ 9(l); 15-1, p. 17).  Plaintiff was provided with a handout illustrating back exercises, and was encouraged not to depend too much on his back brace.

5

(Docs. 15-2, Brown Aff., ¶ 9(l); 15-1, p. 17).  Plaintiff still had a current prescription for Naproxen. (Docs. 15-2, Brown Aff., ¶ 9(l); 15-1, p. 17).

On February 21, 2013, Plaintiff was seen in the Medical Clinic for back pain.  (Doc. 15-2, Brown Aff., ¶ 9(m)).  Plaintiff's pain medication was changed to Mobic 7.5 mg, and an x-ray of the lumber spine was ordered.  (*Id.*; Doc. 15-1, pp. 13, 37).  The x-ray was taken on February 27, 2013.  (Docs. 15-2, Brown Aff. ¶ 9(n); 15-1, p. 37).  The stated conclusion of the x-ray was that the "Grade 1 anterolisthesis at L4-5 [was] stable."  (Doc. 15-1, p. 37).

Plaintiff was issued a cane on April 17, 2013, and was told to continue with the Mobic for back pain.  (Doc. 15-2, Brown Aff., ¶ 9(o)).  On June 24, 2013, Plaintiff was seen again for complaints of back pain.  (*Id.* at ¶ 9(p)).  Defendant requested a new mattress for Plaintiff, and Defendant instructed Plaintiff to wear his back brace properly, to ice his back at intervals during the day, and to continue taking Mobic as prescribed.  (*Id.*; Doc. 15-1, p. 8).

The undisputed evidence shows that Plaintiff received treatment for his back from several medical staff employees.  Plaintiff suffered from back pain beginning in May of 2012.  The medical staff at ASP, including Defendant, provided Plaintiff with pain medication, a back brace, a cane, and requested a new mattress for Plaintiff.  Further, the medical staff ordered an x-ray of Plaintiff's back, and instructed Plaintiff on appropriate exercises to strengthen his back.

While the evidence shows Defendant did not treat Plaintiff on October 11, 2012, Defendant reviewed Plaintiff's medical information and determined that Plaintiff did not need to be seen by a nurse at that time.  Plaintiff had received a full evaluation regarding his back pain on October 3, 2012, Plaintiff was on a prescribed pain medication, and Plaintiff's vital signs indicated he was not in acute distress.  Defendant determined that Plaintiff needed to allow the treatment plan prescribed for him to take effect.  Plaintiff was not denied medical treatment, but simply disagreed with the method and

6

amount of treatment he received, which does not establish an Eighth Amendment claim.  *See Waldrop v. Evans*, 871 F.2d 1030, 103 (11th Cir. 1989) ("when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (evidence showed that the plaintiff received "significant" medical care in jail, and while the plaintiff may have desired a different mode of treatment, the care provided did not rise to the level of deliberate indifference).

As Plaintiff failed to provide the Court with evidence to refute Defendant's showing that she was not deliberately indifferent to a serious medical need, no genuine issue of fact remains regarding Plaintiff's claim.  Thus, Plaintiff's claims cannot survive Defendant's Motion for Summary Judgment.

## Conclusion

As Plaintiff has failed to rebut Defendant's summary judgment showing, it is the recommendation of the undersigned that Defendant's Motion for Summary Judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 14th day of April, 2014.

s/ ***THOMAS Q. LANGSTAFF***
**UNITED STATES MAGISTRATE JUDGE**

llf